NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
PUNEET V. KAKKAR (Cal. Bar No. 259816)
Assistant United States Attorney
Deputy Chief, International Narcotics, Money
  Laundering, and Racketeering Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5728
    Facsimile: (213) 894-0142
    E-mail:    puneet.kakkar@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

07/22/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: ___AP___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

            Plaintiff,

                v.

KAIS MOHAMMAD,
  aka "Superman29"

            Defendant.

No. CR 8:20-cr-00088-JLS

PLEA AGREEMENT FOR DEFENDANT
KAIS MOHAMMAD

1.    This constitutes the plea agreement between Kais Mohammad,
also known as "superman29," ("defendant") and the United States
Attorney's Office for the Central District of California (the "USAO")
in the above-captioned case.  This agreement is limited to the USAO
and cannot bind any other federal, state, local, or foreign
prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

      a.    Give up the right to indictment by a grand jury and,
at the earliest opportunity requested by the USAO and provided by the

1   Court, appear and plead guilty to a three-count information in the

2   form attached to this agreement as Exhibit A or a substantially

3   similar form, which charges defendant with operating an unlicensed

4   money transmitting business in violation of 18 U.S.C. § 1960;

5   laundering of monetary instruments, in violation of 18 U.S.C.

6   § 1956(a)(3)(B); and failure to maintain an effective anti-money

7   laundering program in violation of 31 U.S.C. §§ 5318(h), 5322(b).

8          b.   Not contest facts agreed to in this agreement.

9          c.   Abide by all agreements regarding sentencing contained

10  in this agreement.

11         d.   Appear for all court appearances, surrender as ordered

12  for service of sentence, obey all conditions of any bond, and obey

13  any other ongoing court order in this matter.

14         e.   Not commit any crime; however, offenses that would be

15  excluded for sentencing purposes under United States Sentencing

16  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

17  within the scope of this agreement.

18         f.   Be truthful at all times with the United States

19  Probation and Pretrial Services Office and the Court.

20         g.   Pay the applicable special assessments at or before

21  the time of sentencing unless defendant has demonstrated a lack of

22  ability to pay such assessments.

23                 FORFEITURE AND FINANCIAL ACCOUNTABILITY

24      3.   Defendant further agrees:

25         a.   To forfeit all right, title, and interest in and to

26  any and all monies, properties, and/or assets of any kind, derived

27  from or acquired as a result of, or used to facilitate the commission

28  of, or involved in the illegal activity to which defendant is

2

pleading guilty, specifically including, but not limited to, the following (collectively, the "Forfeitable Assets"):

       i.   $22,820 in U.S. currency seized on or about November 20, 2019;

      ii.  One Lamassu cryptocurrency kiosk with serial number #L221716 and #L491705 seized on or about November 20, 2019;

    iii. One Lamassu cryptocurrency kiosk with serial number #LD170217153 seized on or about November 20, 2019;

     iv.  One Lamassu cryptocurrency kiosk with serial number #LD170426195 seized on or about November 20, 2019;

      v.   One Lamassu cryptocurrency kiosk with serial number #LD160625192 seized on or about November 20, 2019;

     vi.  One Lamassu cryptocurrency kiosk with serial number #LD160501744 seized on or about November 20, 2019;

    vii. One Lamassu cryptocurrency kiosk with serial number #L221717 and #L491704 seized on or about November 20, 2019;

   viii.   One Lamassu cryptocurrency kiosk with serial number #LD140927273 seized on or about November 20, 2019;

     ix.  One Lamassu cryptocurrency kiosk with serial number #LD160716918 seized on or about November 20, 2019;

      x.   One Lamassu cryptocurrency kiosk with serial number #LD170415310 seized on or about November 20, 2019;

     xi.  One Lamassu cryptocurrency kiosk with serial number #LD160309782 seized on or about November 20, 2019;

    xii. One Lamassu cryptocurrency kiosk with serial number #L131822 and #L461815 seized on or about November 20, 2019;

   xiii.   One Lamassu cryptocurrency kiosk with serial number #LD160425791 seized on or about November 20, 2019;

xiv.  One Lamassu cryptocurrency kiosk with serial number #L211713 seized on or about November 20, 2019;

xv.  One Lamassu cryptocurrency kiosk with serial number #LD170421955 seized on or about November 20, 2019;

xvi.  One Lamassu cryptocurrency kiosk with serial number #LD170201361 seized on or about November 20, 2019;

xvii.  One Lamassu cryptocurrency kiosk with serial number #LD170716190 seized on or about November 20, 2019;

xviii.  One Lamassu cryptocurrency kiosk (no serial number) seized from the ARCO Gas Station Food Mart located at 17013 Lakewood Blvd., Bellflower, CA 90706 on or about November 20, 2019;

xix.  6.66337649 BTC seized on or about November 20, 2019;

xx.  4.95443605 BTC seized on or about November 20, 2019;

xxi.  1.92325685 BTC seized on or about November 20, 2019;

xxii.  1.05261245 BTC seized on or about November 20, 2019;

xxiii.  2.81406152 BTC seized on or about November 20, 2019;

xxiv.  222.519134649399048478 ETH seized on or about November 20, 2019;

xxv.  1.017875756 BTC seized on or about November 20, 2019

b.  To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.  To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture

1   and the completing of any other legal documents required for the

2   transfer of title to the United States.

3          d.   Not to contest any administrative forfeiture

4   proceedings or civil judicial proceedings commenced against the

5   Forfeitable Assets.  If defendant submitted a claim and/or petition

6   for remission for all or part of the Forfeitable Assets on behalf of

7   himself or any other individual or entity, defendant shall and hereby

8   does withdraw any such claims or petitions, and further agrees to

9   waive any right he may have to seek remission or mitigation of the

10  forfeiture of the Forfeitable Assets.

11         e.   To deliver to the undersigned Assistant United States

12  Attorney, at the time of the execution of this Plea Agreement, a

13  notarized release, in the form of Exhibit B hereto, executed by Aqeel

14  Mohammad and Lubna Mohammad, of their rights to contest the

15  forfeiture of the Forfeitable Assets.  Defendant hereby represents

16  and certifies that he is aware of no other individual or entity who

17  may have any right or interest in the Forfeitable Assets.

18         f.   Not to assist any other individual in any effort

19  falsely to contest the forfeiture of the Forfeitable Assets.

20         g.   Not to claim that reasonable cause to seize the

21  Forfeitable Assets was lacking.

22         h.   To prevent the transfer, sale, destruction, or loss of

23  any and all assets described above to the extent defendant has the

24  ability to do so.

25         i.   To fill out and deliver to the USAO a completed

26  financial statement listing defendant's assets on a form provided by

27  the USAO.

28

j.    That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

k.    With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

<u>THE USAO'S OBLIGATIONS</u>

4.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to

1  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

2  additional one-level reduction if available under that section.

3  <u>NATURE OF THE OFFENSES</u>

4      5.   Defendant understands that for defendant to be guilty of

5  the crime charged in count one, that is, operating an unlicensed

6  money transmitting business in violation of Title 18, United States

7  Code, Sections 1960(a), (b)(1)(C), the following must be true: (1)

8  defendant knowingly conducted, controlled, managed, supervised,

9  directed, or owned a business; (2) the business was a money

10 transmitting business; and (3) that business was unlicensed, that is,

11 a business which affects interstate or foreign commerce and involves

12 the transportation or transmission of funds that are known to the

13 defendant to have been derived from a criminal offense or are

14 intended to be used to promote or support unlawful activity.

15     6.   Defendant also understands that for defendant to be guilty

16 of the crime charged in count two, that is, money laundering, in

17 violation of Title 18, United States Code, Section 1956(a)(3)(B), the

18 following must be true: (1) defendant conducted a financial

19 transaction that affected interstate or foreign commerce in any way

20 or degree; (2) the transaction involved property represented by a law

21 enforcement officer, and believed by the defendant, to be the

22 proceeds of some form of unlawful activity; and (3) defendant acted

23 with the intent to conceal or disguise the nature, location, source,

24 ownership, or control of the property.

25     7.   Defendant understands that for defendant to be guilty of

26 the crime charged in count three, that is, failure to maintain an

27 effective anti-money laundering program, in violation of Title 31,

28 United States Code, Sections 5318(h), 5322, the following must be

true: (1) defendant was a money services business located in the United States operating as an exchanger of convertible virtual currency; (2) defendant failed to implement one or more of the following minimal requirements set forth by regulation by the Secretary of the Treasury: (i) policies, procedures, and internal controls regarding verifying customer identification, filing reports required for money services businesses, creating and retaining records; (ii) the designation of a person to assure day to day compliance with anti-money laundering controls, including assuring that the money services business properly files reports as required by law and providing appropriate training and education; (iii) providing education of appropriate personnel concerning responsibilities under anti-money laundering program; or (iv) providing for independent review to monitor and maintain an adequate anti-money laundering program; and (3) defendant acted willfully in failing to develop, implement, and maintain an effective anti-money laundering program.

<u>PENALTIES</u>

8.   Defendant understands that the statutory maximum sentence that the Court can impose for count one, a violation of Title 18, United States Code, Sections 1960(a), (b)(1)(C) is:  five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands that the statutory maximum sentence that the Court can impose for count two, a violation of Title 18, United States Code, Section 1956(a)(3)(B), is: 20 years imprisonment;

years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.  Defendant understands that the statutory maximum sentence that the Court can impose for count three, a violation of Title 31, United States Code, Sections 5318(h), 5322:  five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.  Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 30 years imprisonment; a three-year period of supervised release; a fine of $750,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $300.

12.  The Court will also order forfeiture of the property listed in the allegation of the information pursuant to 18 U.S.C. § 982 and 28 U.S.C. § 2461(c).

13.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

14.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15.   Defendant understands that, if defendant is not a United States citizen, the felony convictions in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony convictions in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

<u>FACTUAL BASIS</u>

16.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty

to the charges described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 18 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct.

Defendant Kais Mohammad ("defendant") operated an illegal
virtual-currency money services business from in or around December
2014 to November 2019.  As part of this business, defendant offered
Bitcoin-cash exchange services for a commission.  Defendant offered
these services, in person and through a network of kiosks
(colloquially known as "ATMs") (hereinafter, "BTM") throughout the
Central District of California, which was advertised as part of a
business known as "Herocoin."  Defendant was the primary operator and
owner of Herocoin, and knowingly operated and controlled the
business.  At all times relevant to this factual basis, including
from January 2015 to November 2019, defendant knew that Bitcoin-cash
exchange services were subject to regulation by the Financial Crimes
Enforcement Network ("FinCEN"), and specifically constituted money
services businesses that were obligated to comply with the Bank
Secrecy Act.  In total, in connection with his illegal business,
defendant admits that he exchanged more than $15 million, but no more
than $25 million, from in-person exchanges and transactions occurring
over his BTMs.

### Background on Exchange Businesses and BTMs

Defendant initially advertised peer-to-peer exchange services on
a website, localbitcoins.com.  Defendant adopted and used the moniker
"superman29," and posted advertisements on LBC to buy and sell BTC
throughout the Los Angeles County area, in transactions valued up to

$25,000 cash.  Defendant conducted in-person exchanges of Bitcoin for cash, and vice versa, with customers who met him on localbitcoins.com.  In a typical transaction, defendant would meet with clients at a public location and exchange currency for the client.  Defendant did not inquire as to the source of funds for his clients and/or would not inquire as to the purpose of the exchange. Defendant knew that at least one of his clients was engaged in illicit activity on the dark web.  And in many occasions, including in transactions with undercover agents, knew that the funds he was exchanging were proceeds (or represented to be proceeds) of illicit activity.  As part of his business, defendant later purchased BTMs that he operated for customers to use.  Defendant advertised these BTMs on the internet, which were in malls, gas stations, and convenience stores in cities such as Hesperia, Temecula, Riverside, Corona, Santa Ana, Arcadia, Los Angeles, Huntington Beach, Cerritos, Lakewood, Bellflower, Lynwood, Huntington Park, Culver City, Colton, and San Clemente.  Defendant's operation of BTMs included processing cryptocurrency that was deposited into the machines, supplying the BTMs with cash that customers would withdraw, maintaining the server software that operated the BTMs, etc.  Defendant was able to monitor transactions on the BTMs and identify and/or monitor transactions that occurred on each BTM.

For both his in-person exchange services and transactions conducted on his BTMs, defendant charged rates significantly above the prevailing market rate for exchanges that are charged by registered, complaint institutions.  Defendant charged up to 25% for transactions he conducted in person and/or over his BTMs.

<u>Knowledge of Bank Secrecy Act Requirements and Operation of</u>

<u>Unlicensed Money Transmitting Business</u>

Defendant knew, from essentially the inception of his business, that he was required to register with FinCEN as a money services business.  In 2009, defendant was an employee for a bank, and as a personal banker, was responsible for training others on compliance procedures.  He was also specifically aware of the compliance requirements for exchangers of virtual currencies such as himself and his BTM network.  For example, in January 2015, defendant certified to the manufacturer of the BTMs that defendant purchased that he was aware of the applicable guidelines from FinCEN.  During this time, he was aware that he was required to develop and maintain an effective anti money-laundering program, file currency transaction reports for exchanges of currency (including Bitcoin) in excess of $10,000, conduct due diligence customers, and file suspicious activity reports for transactions over $2,000 which he knew, suspected, or had reason to suspect that the transaction involved use of his business to facilitate criminal activity.  Defendant knew of these requirements, and intentionally did not comply with them.  After FinCEN directly contacted defendant in July 2018 about the need to register, defendant registered as a money services business on or about July 16, 2018.

However, even after registering, as evidenced by the transactions described herein, he failed to fully comply with the Bank Secrecy Act, including maintaining an effective anti-money laundering program, filing certain reports, and conducting due diligence on customers.  Furthermore, even after registering with FinCEN, defendant continued to conduct in-person exchanges, and

allowed BTM transactions to occur, with customers who either represented the proceeds to be of an illicit nature (as described below) or with whom he had reason to believe were dealing in illicit businesses.  For example, in or around April and May 2019, defendant conducted in-person Bitcoin-cash transactions with an individual who informed him that "[b]usiness has been slow [because of] dark web going under maintenance."  Defendant never obtained the identification of this individual or filed a suspicious activity report, and continued to do business with this individual.

Accordingly, defendant failed to implement the requirements set forth by regulation by the Secretary of the Treasury and failed to do so willfully.

<u>Transactions with Undercover Agents</u>

Agents with Homeland Security Investigations ("HSI") conducted the following transactions with defendant and/or his BTM:

- On September 12, 2018, an agent with HSI obtained a total of $14,500 worth of Bitcoin at a BTM in Lakewood, California, structured in three transactions (since the maximum limit was $5,000 cash per transaction).  All three transactions happened successively on and on the same day.  The machine did not ask the agent for identification.  Defendant never filed a currency transaction report for this overall transaction.

- Between February and August 2019, defendant conducted in-person transactions with agents of HSI, who represented cash that they sought to exchange with defendant were proceeds of illegal activity.  Defendant conducted three transactions with the undercover agents, in the following amounts:  $25,000, $15,000, and $16,000.  During a meeting on July 25, 2019, one of the HSI

14

undercover agents informed defendant that he worked at a "karaoke bar," and that the operator of the "karaoke bar" employed women from Korea to entertain men in various ways, including sharing drinks, acting like their "girlfriends," and engaging in sexual activity. The represented proceeds of that activity, which defendant understood to be from activity in connection with the "karaoke bar," were in cash, which the undercover agent sought to exchange into Bitcoin. On August 28, 2019, defendant met with that same undercover agent, and exchanged $16,000 in cash (which the undercover agent represented to be proceeds from the illicit activity described above) for approximately 1.58592 Bitcoin; this transaction had an ID of 131a4c9e37c8722e2506aa00573a0ee8b253eebfbecdc3d4873e1a46ca3ecee9 on the Blockchain. Defendant never filed a currency transaction report or suspicious activity report for these transactions. Defendant never obtained the identification of the HSI agents with whom he transacted. Defendant intentionally failed to comply with these obligations.

<u>Failure to Create and Implement Effective Anti-Money Laundering Program for In-Person and BTMs</u>

As indicated above by way of example, defendant allowed significant and suspicious transactions to occur at his BTMs and during in-person exchanges. During the relevant time discussed herein, defendant failed to create and implement an effective anti-money laundering program for his exchange services. For example, defendant failed to get full customer identification through his BTMs, including those who were involved in illicit activities, such

15

as the dark web, and the undercover agents who represented themselves to be involved in illegal activities. Customers were also able to conduct multiple transactions at BTMs of up to $3,000 without providing identification cards, and customers could use multiple BTMs operated by defendant (none of which had a camera or other way to ensure that any identification provided was the person conducting the transaction) without being recognized, or vetted, by defendant.

<u>SENTENCING FACTORS</u>

17. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

18. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

**COUNT ONE: UNLICENSED MONEY REMITTING**

| | | |
|---|---|---|
| Base Offense Level: | 6 | [U.S.S.G. § 2S1.3(a)(2)] |
| Value of Funds ($9.5–$25 million) | | [U.S.S.G. § 2S1.3(a)(2), |
| | +20 | 2B1.1(b)(1)(K)] |
| Source of Funds | +2 | |

16

**COUNT TWO:   LAUNDERING OF MONETARY INSTRUMENTS**

| | | | |
|---|---|---|---|
| Base Offense Level: | 8 | [U.S.G. § 2S1.1(a)(2)] |
| Value of Laundered Funds | | [U.S.G. § 2S1.3(A)(2), |
| | +6 | 2B1.1(b)(1)(E)] |
| 1956 Conviction | +2 | [U.S.G. § 2S1.1(b)(2)(B)] |
| Business of Laundering Funds | +4 | [U.S.G. § 2S1.1(b)(2)(C)] |

**COUNT THREE:   FAILURE TO IMPLEMENT ANTI MONEY LAUNDERING PROGRAM**

| | | | |
|---|---|---|---|
| Base Offense Level: | 8 | [U.S.G. § 2S1.1(a)(2)] |
| Unlawful Activity | +2 | [U.S.G. § 2S1.1(b)(1)] |
| Part of an Offense Exceeding $100,000 | +2 | [U.S.G. § 2S1.1(b)(2)] |

The parties further agree that all three counts of conviction "group," that there are no multiple-count adjustments, and that the controlling guidelines range for all counts is that identified above, for Count One of the Information.

19.   Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

20.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

21.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

17

1

## WAIVER OF CONSTITUTIONAL RIGHTS

2      22.   Defendant understands that by pleading guilty, defendant

3  gives up the following rights:

4           a.   The right to persist in a plea of not guilty.

5           b.   The right to a speedy and public trial by jury.

6           c.   The right to be represented by counsel -- and if

7  necessary have the Court appoint counsel -- at trial.  Defendant

8  understands, however, that, defendant retains the right to be

9  represented by counsel -- and if necessary have the Court appoint

10 counsel -- at every other stage of the proceeding.

11          d.   The right to be presumed innocent and to have the

12 burden of proof placed on the government to prove defendant guilty

13 beyond a reasonable doubt.

14          e.   The right to confront and cross-examine witnesses

15 against defendant.

16          f.   The right to testify and to present evidence in

17 opposition to the charges, including the right to compel the

18 attendance of witnesses to testify.

19          g.   The right not to be compelled to testify, and, if

20 defendant chose not to testify or present evidence, to have that

21 choice not be used against defendant.

22          h.   Any and all rights to pursue any affirmative defenses,

23 Fourth Amendment or Fifth Amendment claims, and other pretrial

24 motions that have been filed or could be filed.

25      23.   Understanding that the government has in its possession

26 digital devices and/or digital media seized from defendant, defendant

27 waives any right to the return of digital data contained on those

28 digital devices and/or digital media and agrees that if any of these

digital devices and/or digital media are returned to defendant, the government may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

## WAIVER OF APPEAL OF CONVICTIONS

24. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

25. Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 60 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions

mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

26. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 57 months, the USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEAS</u>

27. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

28. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

29. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.

If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

30.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

31.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

32.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.   Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be withiN the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

33.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

34.   The parties agree that this agreement will be considered

///

///

1  part of the record of defendant's guilty plea hearing as if the

2  entire agreement had been read into the record of the proceeding.

3  AGREED AND ACCEPTED

4  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
5  CALIFORNIA

6  NICOLA T. HANNA
   United States Attorney

7

8  *Puneet V Kakkar*                              July 20, 2020

9  PUNEET V. KAKKAR                               Date
   Assistant United States Attorney

10

11 KAIS MOHAMMAD                                  7-16-2020
   Defendant                                      Date

12
                                                  7/17/2020
13 MICHAEL GOLDSTEIN, ESQ.                        Date
   HAGOP KUYUMJIAN, ESQ.
14 Attorneys for Defendant KAIS
   MOHAMMAD

15

16                    CERTIFICATION OF DEFENDANT

17      I have read this agreement in its entirety.  I have had enough

18 time to review and consider this agreement, and I have carefully and

19 thoroughly discussed every part of it with my attorney.  I understand

20 the terms of this agreement, and I voluntarily agree to those terms.

21 I have discussed the evidence with my attorney, and my attorney has

22 advised me of my rights, of possible pretrial motions that might be

23 filed, of possible defenses that might be asserted either prior to or

24 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

25 of relevant Sentencing Guidelines provisions, and of the consequences

26 of entering into this agreement.  No promises, inducements, or

27 representations of any kind have been made to me other than those

28 contained in this agreement.  No one has threatened or forced me in

                                  23

any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charges and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____          7-16-2020
KAIS MOHAMMAD                             Date
Defendant


### CERTIFICATION OF DEFENDANT'S ATTORNEY

        I am KAIS MOHAMMAD's attorney.  I have carefully and thoroughly
discussed every part of this agreement with my client.  Further, I
have fully advised my client of his rights, of possible pretrial
motions that might be filed, of possible defenses that might be
asserted either prior to or at trial, of the sentencing factors set
forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this
agreement; no one has threatened or forced my client in any way to
enter into this agreement; my client's decision to enter into this
agreement is an informed and voluntary one; and the factual basis set
forth in this agreement is sufficient to support my client's entry of
guilty pleas pursuant to this agreement.

_____          7/17/2020
MICHAEL GOLDSTEIN, ESQ.                   Date
HAGOP KUYUMJIAN, ESQ.
Attorney for Defendant KAIS
MOHAMMAD

Exhibit A

1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11              Plaintiff,              I N F O R M A T I O N

12              v.                      [18 U.S.C. §§ 1960(a), (b)(1)(C):
                                        Operating an Unlicensed Money
13   KAIS MOHAMMAD,                     Transmitting Business; 18 U.S.C.
        aka "Superman29,"              § 1956(a)(3)(B): Laundering of
14        "Herocoin,"                   Monetary Instruments; 31 U.S.C.
                                        §§ 5318(h), 5322(a): Failure to
15              Defendant.              Maintain an Effective Anti-Money
                                        Laundering Program; 18 U.S.C.
16                                      § 982 and 28 U.S.C. § 2461(c):
                                        Criminal Forfeiture]
17

18        The United States Attorney charges:

19                               COUNT ONE

20                  [18 U.S.C. §§ 1960(a), (b)(1)(C)]

21        Beginning in or about January 2015, and continuing until on or

22   about November 20, 2019, in Los Angeles, Orange, Riverside, and San

23   Bernardino Counties, within the Central District of California, and

24   elsewhere, defendant KAIS MOHAMMAD, also known as "Superman29" and

25   "Herocoin," knowingly conducted, controlled, managed, supervised,

26   directed, and owned an unlicensed money transmitting business

27   affecting interstate and foreign commerce, namely, a virtual currency

28   exchange business, that involved the transportation or transmission

1    of funds that were known to the defendant to have been derived from a

2    criminal offense or were intended to be used to promote or support

3    unlawful activity.

COUNT TWO

[18 U.S.C. § 1956(a)(3)(B)]

In or around January 2015, in Orange County, within the Central District of California, defendant KAIS MOHAMMAD, also known as "Superman29" and "Herocoin," with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, that is, foreign transportation for prostitution in violation of 18 U.S.C. § 2421 ("foreign transportation for prostitution"), knowingly conducted a financial transaction, affecting interstate commerce, involving property represented by an authorized agent of the United States government to be proceeds of specified unlawful activity, that is, foreign transportation for prostitution, namely, the exchange of $16,000 in United States dollars, for approximately 1.58592 Bitcoin, inclusive of fees (Blockchain transaction ID 131a4c9e37c8722e2506aa00573a0ee8b253eebfbecdc3d4873e1a46ca3ecee9).

1          COUNT THREE

2          [31 U.S.C. §§ 5318(h), 5322(a)]

3      Beginning in or about May 2015, and continuing until in or about

4  November 20, 2019, in Los Angeles, Orange, Riverside, and San

5  Bernardino Counties, within the Central District of California, and

6  elsewhere, defendant KAIS MOHAMMAD, also known as "Superman29" and

7  "Herocoin," willfully violated the Bank Secrecy Act, Title 31, United

8  States Code, Sections 5318(h) and 5322, and regulations issued

9  thereunder, specifically, Title 31, Code of Federal Regulations,

10  Section 1022.210(a), by failing to develop, implement, and maintain

11  an effective anti-money laundering program for his virtual currency

12  exchange business.

13      Specifically, defendant MOHAMMAD willfully failed to implement

14  and maintain effective policies, procedures, and internal controls

15  for: (1) verifying customer identification, in particular as to

16  customers exchanging in excess of $10,000 in currency in a single day

17  as required by the Bank Secrecy Act; (2) filing Currency Transaction

18  Reports for currency transactions in excess of $10,000, conducted by

19  or on behalf of the same person on the same day; and (3) filing

20  Suspicious Activity Reports for transactions over $2,000 involving

21  funds that defendant knew, suspected, or had reason to suspect that

22  the transaction involved use of the money services business to

23  facilitate criminal activity.

24      Defendant MOHAMMAD took actions designed to prevent the

25  implementation and maintenance of an effective anti-money laundering

26  program, in that he: (1) failed to file currency transaction reports

27  as required for currency transactions exceeding $10,000 that were

28  conducted by or on behalf of the same person on the same day;

4

(2) failed to file suspicious activity reports for transactions over $2,000 that he knew, suspected, and had reason to suspect that the transaction involved use of his business to facilitate criminal activity, namely, drug trafficking; and (3) operated kiosks by which customers could conduct suspicious virtual currency transactions and transactions exceeding $10,000 in the same day without providing any form of identification.

1                        FORFEITURE ALLEGATION

2                   [18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

3        1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States will seek

5   forfeiture as part of any sentence, pursuant to Title 18, United

6   States Code, Section 982(a)(1) and Title 28, United States Code,

7   Section 2461(c), in the event of Defendant's conviction of the

8   offenses set forth in any of Counts 1 or 2 of this Information.

9        2.   The Defendant, if so convicted, shall forfeit to the United

10  States of America the following:

11            (a)   Any property, real or personal, involved in such

12  offense, and any property traceable to such property; and

13            (b)   To the extent such property is not available for

14  forfeiture, a sum of money equal to the total value of the property

15  described in subparagraph (a).

16       3.   Pursuant to Title 21, United States Code, Section 853(p), as

17  incorporated by Title 18, United States Code, Section 982(b)(1), and

18  Title 18, United States Code, Section 982(b)(2), the defendant, if so

19  convicted, shall forfeit substitute property, if, by any act or

20  omission of the defendant, the property described in the preceding

21  paragraph, or any portion thereof: (a) cannot be located upon the

22  exercise of due diligence; (b) has been transferred, sold to, or

23  deposited with a third party; (c) has been placed beyond the

24  jurisdiction of the court; (d) has been substantially diminished in

25  value; or (e) has been commingled with other property that cannot be

26  divided without difficulty. Substitution of assets shall not be

27  ordered, however, where the convicted defendant acted merely as an

28  intermediary who handled but did not retain the property in the

                                    6

1  course of the money laundering offense unless the defendant, in

2  committing the offense or offenses giving rise to the forfeiture,

3  conducted three or more separate transactions involving a total of

4  $100,000.00 or more in any twelve-month period.

5

6                          NICOLA T. HANNA
                          United States Attorney
7

8

9                          BRANDON D. FOX
                          Assistant United States Attorney
10                          Chief, Criminal Division

11                          CAROL A. CHEN
                          Assistant United States Attorney
12                          Chief, International Narcotics, Money
                            Laundering, and Racketeering Section
13

14                          PUNEET V. KAKKAR
                          Assistant United States Attorney
15                          Deputy Chief, International Narcotics, Money
                            Laundering, and Racketeering Section

16

17

18

19

20

21

22

23

24

25

26

27

28

7

Exhibit B

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
PUNEET V. KAKKAR (Cal. Bar No. 259816)
Assistant United States Attorney
Deputy Chief, International Narcotics, Money
  Laundering, and Racketeering Section
     1400/1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5728
     Facsimile: (213) 894-0142
     E-mail:   puneet.kakkar@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>                    v.<br><br>KAIS MOHAMMAD,<br>  aka "Superman29"<br><br>                Defendant. | <u>RELEASE</u> |

1.    KAIS MOHAMMAD ("defendant") has entered into a plea agreement with the United States Attorney's Office for the Central District of California ("the USAO").

2.    Defendant has agreed to forfeit the following property to the United States (the "Forfeitable Assets"):

        a)    $22,820 in U.S. currency seized on or about November 20, 2019;

        b)    One Lamassu cryptocurrency kiosk with serial number #L221716 and #L491705 seized on or about November 20, 2019;

c)   One Lamassu cryptocurrency kiosk with serial number #LD170217153 seized on or about November 20, 2019;

d)   One Lamassu cryptocurrency kiosk with serial number #LD170426195 seized on or about November 20, 2019;

e)   One Lamassu cryptocurrency kiosk with serial number #LD160625192 seized on or about November 20, 2019;

f)   One Lamassu cryptocurrency kiosk with serial number #LD160501744 seized on or about November 20, 2019;

g)   One Lamassu cryptocurrency kiosk with serial number #L221717 and #L491704 seized on or about November 20, 2019;

h)   One Lamassu cryptocurrency kiosk with serial number #LD140927273 seized on or about November 20, 2019;

i)   One Lamassu cryptocurrency kiosk with serial number #LD160716918 seized on or about November 20, 2019;

j)   One Lamassu cryptocurrency kiosk with serial number #LD170415310 seized on or about November 20, 2019;

k)   One Lamassu cryptocurrency kiosk with serial number #LD160309782 seized on or about November 20, 2019;

l)   One Lamassu cryptocurrency kiosk with serial number #L131822 and #L461815 seized on or about November 20, 2019;

m)   One Lamassu cryptocurrency kiosk with serial number #LD160425791 seized on or about November 20, 2019;

n)   One Lamassu cryptocurrency kiosk with serial number #L211713 seized on or about November 20, 2019;

o)   One Lamassu cryptocurrency kiosk with serial number #LD170421955 seized on or about November 20, 2019;

p)   One Lamassu cryptocurrency kiosk with serial number #LD170201361 seized on or about November 20, 2019;

q)   One Lamassu cryptocurrency kiosk with serial number #LD170716190 seized on or about November 20, 2019;

1          r)   One Lamassu cryptocurrency kiosk (no serial number)
2 seized from the ARCO Gas Station Food Mart located at 17013 Lakewood
Blvd., Bellflower, CA 90706 on or about November 20, 2019;

3          s)   6.66337649 BTC seized on or about November 20, 2019;

4

5          t)   4.95443605 BTC seized on or about November 20, 2019;

6          u)   1.92325685 BTC seized on or about November 20, 2019;

7          v)   1.05261245 BTC seized on or about November 20, 2019;

8          w)   2.81406152 BTC seized on or about November 20, 2019;

9

10          x)   222.519134649399048478 ETH seized on or about November
20, 2019;

11          y)   1.017875756 BTC seized on or about November 20, 2019

12

13    3.   Aqeel Mohammad ("A. Mohammed") hereby knowingly,

14 voluntarily, and intelligently waives, relinquishes, and surrenders

15 all rights to contest the forfeiture of the Forfeitable Assets, and

16 all rights to judicial review of the forfeiture of the Forfeitable

17 Assets.  To the extent that A. Mohammed has already filed one or more

18 claims to contest administrative or judicial forfeiture of the

19 Forfeitable Assets, this Waiver and Release constitutes a complete

20 withdrawal of such claims, and A. Mohammed agrees and understands

21 that the Forfeitable Assets shall be administratively or judicially

22 forfeited to the United States of America without any further notice.

23

24    Dated this 16 Day of July, 2020.

25

26

27                            AQEEL  MOHAMMAD

28

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
PUNEET V. KAKKAR (Cal. Bar No. 259816)
Assistant United States Attorney
Deputy Chief, International Narcotics, Money
  Laundering, and Racketeering Section
      1400/1500 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-5728
      Facsimile: (213) 894-0142
      E-mail:   puneet.kakkar@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                 UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

              Plaintiff,              RELEASE

              v.

KAIS MOHAMMAD,
  aka "Superman29"

              Defendant.

     1.   KAIS MOHAMMAD ("defendant") has entered into a plea

agreement with the United States Attorney's Office for the Central

District of California ("the USAO").

     2.   Defendant has agreed to forfeit the following property to

the United States (the "Forfeitable Assets"):

          a)   $22,820 in U.S. currency seized on or about November
20, 2019;

          b)   One Lamassu cryptocurrency kiosk with serial number
#L221716 and #L491705 seized on or about November 20, 2019;

         c)   One Lamassu cryptocurrency kiosk with serial number #LD170217153 seized on or about November 20, 2019;
         d)   One Lamassu cryptocurrency kiosk with serial number #LD170426195 seized on or about November 20, 2019;

         e)   One Lamassu cryptocurrency kiosk with serial number #LD160625192 seized on or about November 20, 2019;

         f)   One Lamassu cryptocurrency kiosk with serial number #LD160501744 seized on or about November 20, 2019;

         g)   One Lamassu cryptocurrency kiosk with serial number #L221717 and #L491704 seized on or about November 20, 2019;

         h)   One Lamassu cryptocurrency kiosk with serial number #LD140927273 seized on or about November 20, 2019;

         i)   One Lamassu cryptocurrency kiosk with serial number #LD160716918 seized on or about November 20, 2019;

         j)   One Lamassu cryptocurrency kiosk with serial number #LD170415310 seized on or about November 20, 2019;

         k)   One Lamassu cryptocurrency kiosk with serial number #LD160309782 seized on or about November 20, 2019;

         l)   One Lamassu cryptocurrency kiosk with serial number #L131822 and #L461815 seized on or about November 20, 2019;

         m)   One Lamassu cryptocurrency kiosk with serial number #LD160425791 seized on or about November 20, 2019;

         n)   One Lamassu cryptocurrency kiosk with serial number #L211713 seized on or about November 20, 2019;

         o)   One Lamassu cryptocurrency kiosk with serial number #LD170421955 seized on or about November 20, 2019;

         p)   One Lamassu cryptocurrency kiosk with serial number #LD170201361 seized on or about November 20, 2019;

         q)   One Lamassu cryptocurrency kiosk with serial number #LD170716190 seized on or about November 20, 2019;

r)   One Lamassu cryptocurrency kiosk (no serial number) seized from the ARCO Gas Station Food Mart located at 17013 Lakewood Blvd., Bellflower, CA 90706 on or about November 20, 2019;

s)   6.66337649 BTC seized on or about November 20, 2019;

t)   4.95443605 BTC seized on or about November 20, 2019;

u)   1.92325685 BTC seized on or about November 20, 2019;

v)   1.05261245 BTC seized on or about November 20, 2019;

w)   2.81406152 BTC seized on or about November 20, 2019;

x)   222.519134649399048478 ETH seized on or about November 20, 2019;

y)   1.017875756 BTC seized on or about November 20, 2019

3.   Lubna Mohammad ("L. Mohammad") hereby knowingly, voluntarily, and intelligently waives, relinquishes, and surrenders all rights to contest the forfeiture of the Forfeitable Assets, and all rights to judicial review of the forfeiture of the Forfeitable Assets.  To the extent that L. Mohammad has already filed one or more claims to contest administrative or judicial forfeiture of the Forfeitable Assets, this Waiver and Release constitutes a complete withdrawal of such claims, and L. Mohammad agrees and understands that the Forfeitable Assets shall be administratively or judicially forfeited to the United States of America without any further notice.

Dated this 16 Day of July, 2020.

LUBNA MOHAMMAD

3